UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

KARLINE JEAN,                                                    COMPLAINT

              Plaintiff,

        - against -                                    Case No: 23 CIV

ROOSEVELT ISLAND OPERATING                      JURY TRIAL DEMANDED
CORPORATION; SHELTON J. HAYNES,
Individually and in his Official Capacity as
President and CEO of RIOC; GRETCHEN
ROBINSON, Individually and in her
Official Capacity as General Counsel of
RIOC; and TAJUNA SHARPE, Individually
and in her Official Capacity as Assistant Vice
President for Administration of RIOC,
              Defendants.
--------------------------------------------------------X

      COMES NOW Karline Jean ("Jean"), by her attorneys, The Law Office of Neal Brickman,

P.C., located at 420 Lexington Avenue - Suite 2811, New York, New York 10170, and as and for

her complaint against defendants, Roosevelt Island Operating Corporation ("RIOC"), Shelton J.

Haynes ("Haynes"), Gretchen Robinson ("Robinson"), Tajuna Sharpe ("Sharpe," and together

with RIOC, Haynes, and Robinson the "Defendants" or "defendants," and together with Haynes,

and Robinson, the "Individual Defendants"), hereby states and alleges as follows:

## Statement Pursuant to Local Civil Rule 1.9

      1.    Plaintiff is an individual citizen of the United States of America and, as such, has

no interests or subsidiaries that need to be disclosed.

## Nature of the Action

      2.    This action arises under Title VII of the Civil Rights Act of 1964, as amended; New

York Executive Law § 296 et seq. and New York City Administrative Code § 8-107 *et seq*., as

well as various additional state and common law causes of action based on Defendants' improper, discriminatory, retaliatory and disparate treatment of Jean.

Jurisdiction

4.     Jurisdiction over the federal claims is invoked pursuant to 28 U.S.C. § 1331, in that these claims arise under the laws of the United States; and over the state law claims pursuant to the doctrine of pendent jurisdiction as codified in 28 U.S.C. § 1367.  This action was timely filed within ninety (90) days of the issuance on June 20, 2023 of a Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC"), a copy of which is annexed hereto as Exhibit "A".

Venue

5.     This action is properly laid in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1), because at least one defendant resides in this judicial district, and (b)(2), because a substantial part of the events and omissions giving rise to Jean's claims occurred in this judicial district.

Parties

6.     Ms. Jean is an individual citizen of the United States and a resident of the State of New York, who since June 12, 2020 has filed various complaints of discrimination, including a charge of discrimination with the New York State Division of Human Rights preceding the EEOC Charge referenced above.

7.     RIOC is a public benefit corporation duly authorized and operating under the laws of the State of New York within the City of New York.

8.     Upon information and belief, Haynes is an individual citizen of the United States, a resident of the State of New York and the President and CEO of RIOC.   Haynes qualifies as an

2

"employer" for purposes of individual liability under New York Executive Law § 296, and New York City Administrative Code §§ 8-107 and 8-502 because he participated directly in the discriminatory conduct at issue in this case and as an "employer" under § 296 of the Executive Law by virtue of his ability to affect the terms and conditions of Jean's employment.  Moreover, Haynes is an aider and abettor who actually participated in the conduct giving rise to the claims of discrimination herein.  Haynes is African-American.

9.      Upon information and belief, Robinson is an individual citizen of the United States, and a resident of the State of New York who served as the General Counsel of RIOC at various times relevant hereto.  Robinson qualifies as an "employer" for purposes of individual liability under New York Executive Law § 296, and New York City Administrative Code §§ 8-107 and 8-502 because she participated directly in the discriminatory conduct at issue in this case and as an "employer" under § 296 of the Executive Law by virtue of her ability to affect the terms and conditions of Jean's employment.  Moreover, Robinson is an aider and abettor who actually participated in the conduct giving rise to the claims of discrimination herein. Robinson is African-American.

10.      Upon information and belief, Sharpe is an individual citizen of the United States and a resident of the State of New York who at all relevant times hereto served as Director of Human Resources or as Assistant Vice-President ("AVP") for Administration at RIOC.   Sharpe qualifies as an "employer" for purposes of individual liability under New York Executive Law § 296, and New York City Administrative Code §§ 8-107 and 8-502 because she participated directly in the discriminatory conduct at issue in this case and as an "employer" under § 296 of the Executive Law by virtue of her ability to affect the terms and conditions of Jean's employment.

Moreover, Sharpe is an aider and abettor who actually participated in the conduct giving rise to the claims of discrimination herein. Sharpe is African-American.

<u>Preliminary Statement - Summary of Claims</u>

11.     The gravamen of Jean's claim is that Defendants improperly and repeatedly discriminated against, and retaliated against, Jean for her complaints of a hostile work environment and the repeated use of sexually insensitive and racially improper commentary in the workplace, as well as the denial of a medical accommodation.  Thereafter, subsequent to Jean's filing of a complaint with the New York State Division of Human Rights, Jean was retaliated against through her work assignments and secondment to jobs outside of her normal place of work and which did not allow for any remote working opportunities during COVID. Then within two weeks of the agency's determination, Defendants took the first opportunity that was available to them (without threatening the prior determination by terminating Jean while that matter was ongoing) and summarily terminated Jean without proper cause, justification, or explanation in clear retaliation for having availed herself of protected activity in the filing of a claim with the State Division of Human Rights, as well as having previously complained of discrimination at RIOC: all in clear contraventions of Federal, State, and Local laws.  RIOC, under Haynes, was not run by the book or any established policies, but as directed by the whim and caprice of Haynes, directly and through Sharpe and Robinson, who over saw and effected each abuse of, and act of retaliation against, Jean.

<u>Simple Statement of Background and Relevant Facts</u>

12.     Jean has worked for RIOC for over twenty-one years.

13.     During her tenure at RIOC, Jean was regularly promoted and given increasing amounts of responsibility.

14.     Jean started as a temporary employee and was promoted to a full-time position as a receptionist after approximately two months.  Thereafter, Jean was promoted to Administrative Assistant, then Office Manager, then Executive Assistant, and then transferred to the  Legal Department.

15.     While Jean was Haynes' Executive Assistant in December of 2019, Haynes and Sharpe attempted to have Jean assist them in finding a basis to terminate an employee that they wanted to get rid of for their own nefarious reasons, and not for the good of RIOC.  When they focused on attempting to prove that the employee was stealing time, Haynes demanded that Jean run a timesheet audit on the employee that he wanted an excuse to terminate.  Then, when the report revealed that the employee was working beyond her scope of responsibilities and more than full days, Haynes requested that Jean alter the audit information.

16.     Jean properly refused, and, as a direct result, her time at RIOC was then marked. Tellingly, the employee, despite her strong work ethic and expertise, was ultimately – albeit improperly – terminated by, *inter alia*, Haynes and Sharpe.  Notably, the year prior Haynes – presumably in an effort to ensure that he got his way and to cow any opposition -- had proclaimed in a meeting that he had terminated hundreds of employees but never lost a claim.

17.     Thereafter, effective March 2020, Haynes in retaliation for her lawful and proper refusal to doctor the audit and fiscal records of RIOC removed Jean from her Executive Assistant position to the legal department under the supervision Gretchen Robinson.  Prior to her transfer Haynes had multiple discussions about promoting Jean which would have allowed her to supervise the other executive assistants and front desk operations which would have included a title change and a salary increase. Sharpe was aware and involved in the discussions which all ceased after Jean's refusal to participate in the Defendants' improper scheme to terminate that employee.

18.     Directly thereafter, all RIOC office employees commenced working from home due to the COVID pandemic.

19.     On or about June 12, 2020, Jean made and submitted an email which detailed certain actions of Susan Rosenthal, RIOC's prior CEO, that created a toxic, discriminatory and hostile work environment as a result of her racially insensitive and sexually charged comments.

20.     As a result, Jean was contacted by and participated in an investigation of Rosenthal with the Governor's office in part based on the email that Jean had circulated which contained complaints of discrimination, racially and sexually offensive comments. During the investigation Jean provided witnesses which included Haynes, Sharpe and Robinson. Jean mentioned to the investigator the executive team were aware of Rosenthal's inappropriate behavior and choose not to address it. Jean also referenced the existence of a recording of Rosenthal, who was thereafter terminated once the Governor's office completed their investigation and has since also sued, *inter alia*, RIOC multiple times. Rosenthal's attorneys have repeatedly requested RIOC provide the recording which RIOC has failed to do so.

21.     Haynes, Robinson and Sharpe were aware of Rosenthal's wrongdoings, but never took any corrective action.

22.     Specifically, Haynes, as noted above, had recorded Rosenthal, without her knowledge, speaking offensively; played the recording for other employees; but had not initially shared it with either Rosenthal (for corrective purposes) or later investigators.

23.     While Haynes had shared the recording within days with his staff and friends and according to Haynes, even consulted counsel, it was not until Jean mentioned the recording during

the investigation with the Governor's Office of Employee Relations, that Haynes was forced to provide a copy of the recording.

24.     Thereafter, Robinson began avoiding Jean. She would routinely rebuff meeting attempts, cancel scheduled meetings, and when she did meet, repeat that "we are here to serve Haynes."  When Jean resorted to seeking supervision from Robinson over email, she was ignored and routinely forced to seek answers from the Associate Counsel, Arthur Eliav.

25.     After certain employees were requested to come back into the office again,  on or about March 22, 2021 Jean submitted a request to RIOC through Sharpe, then the RIOC Human Resources  Director, for a reasonable accommodation to continue working from home based on her being in a high-risk category for contracting COVID-19 due to underlying medical conditions.

26.     The request was presented with supporting documentation, including a letter from Jean's physician stating that she needed to continue to work from home as a reasonable accommodation to avoid  increasing her risk of contracting COVID.

27.     On or about April 20, 2021, a local blogger contacted Haynes asking about Jean's "hostile and toxic work environment" claim.

28.     Later that same day, in another act of direct retaliation, Sharpe, after sitting on the request for approximately one month, informed Jean that her request for a reasonable accommodation was denied in direct contravention of the clear medical advice of Jean's physician and directed Jean to return to the office the very next day, April 21, 2021.

29.     As further evidence of the unfair, abusive, and retaliatory nature of this denial, Jean's "mandated" return was not to complete her duties, but rather duties assigned to another individual, a temporary receptionist.

30.     Specifically, Jean was charged with completing the then assigned duties of a receptionist who, despite it being her actual job, was only tasked with two days of receptionist work (while Jean was directed to perform three days of such work) and who was actually allowed to complete her duties as a receptionist remotely while Jean was forced to fulfill such duties in person.

31.     Jean was also tasked with other duties as executive assistant to the legal department, which included having to be on site unloading, unpacking, and reorganizing boxes on a fourth day each week.

32.     Jean was forced to come to work in an environment that was physically dangerous for her and asked to perform tasks that only served to exacerbate those threats.

33.     Tellingly, neither Sharpe, nor RIOC engaged in any interactive process as was, and is, required, to discuss potential alternatives and any options for employees requesting a reasonable medical accommodation.  Sharpe provided a document stating the decision was made by the Designee for Reasonable Accommodation ("DRA") which for RIOC was, upon information and belief Sharpe, but whose decision, per applicable rules and regulations required conference with and the agreement of the Chief Executive Officer or President, namely Haynes.

34.     Moreover, a majority of RIOC office staff continued to work from home during this time.

35.     The purported basis for ignoring the relevant and unrefuted medical opinion presented by Jean's physician and summarily denying Jean's request for a reasonable accommodation was that 176 boxes of legal documents had to be unpacked and refiled after having been moved from one office building to another.  This "explanation" completely ignored that 75%

of the work that Jean was directed to return to the office for (the receptionist work) was actually work that assigned to another employee (an actual receptionist) that was only asked to come in for two days a week.

36.     Moreover, as Jean pointed out, many of these boxes were too heavy for her to be lifting, moving, or manipulating. This was a task for more than one person.

37.     Further, the finance and human resources departments were told that they could unpack their boxes at their leisure and not given a specific time frame, as was Jean who was told that this was her task every Friday.

38.     Clearly, the basis for the denial of Jean's legitimate medical accommodation request was pretextual, and, just as clearly, Defendants were attempting to force Jean out or coerce her into resigning with their disparate treatment.  This reality was only made more clear when – a mere two months after her termination, and before the boxes of other departments were unpacked for the first time, all of the legal department's box were required to be repacked and moved to a off-site location, clearly obviating the need for the on site busy-work that Defendants had created simply to harass and retaliate against Jean.

39.     As a result of this denial and the ongoing harassment, on or about May 24, 2021, Ms. Jean filed a complaint of discrimination with New York State on the basis of ADA and other civil rights violations, including discrimination and retaliation.

40.     The harassment and disparate treatment continued thereafter.  In addition to demanding that she complete work outside the scope of her employment and the tasks of other employees who had not requested a medical accommodation and who had not complained of discrimination, Defendants also secunded Ms. Jean to other positions.

41.    By way of example, Jean was informed by Robinson that she would volunteer in a public plaza for a week in Brooklyn handing out pamphlets concerning FEMA outreach assistance concerning Hurricane Ida.

42.    No other employees within RIOC were reassigned to this task.  To the contrary, at least five employees from RIOC's Sportspark facility were reassigned within RIOC, while only Jean was sent the FEMA site.

43.    As none of these five employees had complained of discrimination or had sought a medical accommodation, Defendants clearly foisted this position on Jean solely in retaliation and to punish her by subjecting her to tasks outside of her job description and with the specific intent of exacerbating her COVID-related concerns.

44.    Despite the clear impropriety of RIOC's determination and clear disparate treatment in compelling Ms. Jean to come into the office to fulfill duties assigned to another employee who was not required to come into the office to complete her own duties, the State Division of Human Rights issued a finding of no probable cause on or about November 15, 2021.

45.    Jean was summarily terminated two weeks later on December 1, 2021.

46.    Jean was given no basis for her termination.  She had not been disciplined.  She had not been written up.  She had been given no warning, much less any writing addressing even any perceived or alleged shortcomings.

47.    The sole basis for Jean's termination after 21 years of loyal and successful employment at RIOC was the fact that she dared to complain.  As soon as the threat of the prior action and the potential for investigation ended, Defendants immediately took action to finalize their retaliation against Jean and terminated her.

48.     Moreover, RIOC continued to retaliate against Jean after her improper termination. Jean was notified a Public Safety Officer would be sent to her residence to retrieve RIOC property this was never done in the past with former employees.

49.     In the normal course, employees who are terminated without cause, as was the case with Jean, were offered spots elsewhere in the organization or otherwise with the State.  Jean was denied this opportunity as well, further evidencing the improper animus directed at her by Defendants.

50.     On September 23, 2022, Jean filed a new Charge of Discrimination with the EEOC.

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>
(Retaliation Under Title VII and Against RIOC)

51.     Plaintiff repeats, realleges, and reiterates each and every allegation set forth in paragraph "1" to "50" above with the same force and effect as if fully set forth herein at length.

52.     Title VII prohibits retaliation for protected activities including, but not limited to, complaining about discrimination, noting disparate treatment of individuals on the basis of discrimination, and filing written complaints concerning the same.

53.     As set forth above, Jean duly complained about discrimination and disparate treatment at RIOC, and filed formal complaints concerning the same.

54.     Jean was, *inter alia*, assigned duties outside the scope of her normal responsibilities, seconded without her consent, forced to work in remote locations without her consent, and ultimately terminated without just cause or basis.

55.     Similarly situated employees, such as, but not limited to, Aida Morales and Annie Fisher who did not complain about discrimination, were not treated in a like manner, much less terminated without any basis.

56.     This ongoing and long-standing pattern of abuse, discrimination, and retaliation culminated in Jean being summarily terminated within two weeks of the NYSDHR's determination and notice of the closing of that organization's investigation.

57.     As a direct and proximate result of this illegal behavior, Jean has suffered, and is continuing to suffer, damages, including, but not limited to, lost waged (front and back), lost benefits accruals, and pain and suffering, as well as the costs and expenses of this and prior actions.

58.     As a result of such discrimination, Jean has been damaged in an amount to be determined at trial, but believed to be not less than $1,000,000.00, as well as entitlement to the costs and expenses of this action, including reasonable attorneys' fees; all warranting, in addition, the imposition of a punitive award.

<u>AS AND FOR A SECOND CAUSE OF ACTION</u>
(Improper Retaliation Under New York Executive Law § 296 against all Defendants)

59.     Plaintiff repeats, realleges, and reiterates each and every allegation set forth in paragraph "1" to "58" above with the same force and effect as if fully set forth herein at length.

60.     The New York Executive Law prohibits retaliation for protected activities, including, but not limited to, complaining about discrimination, noting disparate treatment of individuals on the basis of discrimination, and filing claims of discrimination.

61.     As set forth above, Jean duly complained about discrimination and disparate treatment at RIOC and filed formal complaints concerning the same.

62.     Jean was, *inter alia*, assigned duties outside the scope of her normal responsibilities, seconded without her consent, forced to work in remote locations without her consent, and ultimately terminated with just cause or basis.

63.     Similarly situated employees, such as, but not limited to, Aida Morales and Annie Fisher who did not complain about discrimination, were not treated in a like manner, much less terminated without any basis.

64.     This ongoing and long-standing pattern of abuse, discrimination, and retaliation on the part of RIOC and each of the Individual Defendants culminated in Jean being summarily terminated within two weeks of the NYSDHR's determination and notice of the closing of that organization's investigation.

65.     As a direct and proximate result of this illegal behavior, Jean has suffered, and is continuing to suffer, damages, including, but not limited to, lost waged (front and back), lost benefits accruals, and pain and suffering, as well as the costs and expenses of this and prior actions.

66.      As a result of such discrimination, Jean has been damaged in an amount to be determined at trial, but believed to be not less than $1,000,000.00, as well as entitlement to the costs and expenses of this action, including reasonable attorneys' fees; all warranting, in addition, the imposition of a punitive damages award.

AS AND FOR A THIRD CAUSE OF ACTION
(Improper Retaliation Under New York City Administrative Code  §§ 8-107 and 8-502 against the Individual Defendants)

67.     Plaintiff repeats, realleges, and reiterates each and every allegation set forth in paragraph "1" to "66" above with the same force and effect as if fully set forth herein at length.

68.     The New York City Administrative Code prohibits retaliation for protected activities, including, but not limited to, complaining about discrimination, noting disparate treatment of individuals on the basis of discrimination, and filing claims of discrimination.

69.     As set forth above, Jean duly complained about discrimination and disparate treatment at RIOC and filed formal complaints concerning the same.

70.     Jean was, *inter alia*, assigned duties outside the scope of her normal responsibilities, seconded without her consent, forced to work in remote locations without her consent, and ultimately terminated with just cause or basis.

71.     Each of the individual defendants actively and personally participated in the discrimination and disparate treatment of Jean as set forth above.

72.     Similarly situated employees, such as, but not limited to, Aida Morales and Annie Fisher who did not complain about discrimination,  were not treated in a like manner, much less terminated without any basis.

73.     This ongoing and long-standing pattern of abuse, discrimination, and retaliation culminated in Jean being summarily terminated within two weeks of the NYSDHR's determination and notice of the closing of that organization's investigation.

74.     As a direct and proximate result of this illegal behavior, Jean has suffered, and is continuing to suffer, damages, including, but not limited to, lost waged (front and back), lost benefits accruals, and pain and suffering, as well as the costs and expenses of this and prior actions.

75.      As a result of such discrimination, Jean has been damaged in an amount to be determined at trial, but believed to be not less than $1,000.000.00, as well as entitlement to the costs and expenses of this action, including reasonable attorneys' fees; all warranting, in addition, the imposition of a punitive damages award.

<u>Jury Demand</u>

76.     Plaintiff hereby respectfully demands a trial by Jury.

Dated: New York, New York
        September 15, 2023

The Law Offices of Neal Brickman, PC.
Ethan Leonard (EL2497)
420 Lexington Avenue – Suite 2811
New York, New York 10117
(212) 986-6840
ethan@brickmanlaw.com

Exhibit A

U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

June 20, 2023

Ms. Karline Jean
c/o Ethan Leonard, Esquire
Law Offices of Neal Brickman
420 Lexington Ave.
Suite 2811
New York, NY  10170

Re:  EEOC Charge Against State of New York, Roosevelt Island Operating Corp., et al.
   No. 520202300842

Dear Ms. Jean:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action against the above-named respondent under:  Title I of the Americans with Disabilities Act of 1990,  42 U.S.C. 12111, et seq., and,  Title V, Section 503 of the Act, 42 U.S.C. 12203.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC New York District Office, New York, NY.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

        Sincerely,

        Kristen Clarke
        Assistant Attorney General
        Civil Rights Division

        by     /s/ Karen L. Ferguson
        Karen L. Ferguson
        Supervisory Civil Rights Analyst
        Employment Litigation Section

cc: New York District Office, EEOC
  State of New York, Roosevelt Island Operating Corp., et al.